Bethel, Judge, dissenting.
The majority's opinion in this case improperly expands the role of the judiciary.[1] The regulations governing the housing authority with respect to the termination of benefits provide expedient and decisive action while at the same time ensuring welfare recipients receive the minimum procedural safeguards afforded by the Due Process Clause of the Fourteenth Amendment. In this case, the hearing officer's actions are subject to the authority granted to it by AHA as opposed to an exercise of its own judgment under the law.[2] Moreover, under all circumstances where the authority determines that the hearing officer committed an error, the hearing officer's decisions are not binding on the parties. Consequently, the trial court did not err in finding that the informal hearing was administrative in nature and it therefore lacked jurisdiction to review it. Accordingly, I respectfully dissent.
Under OCGA § 5-4-1(a), "[t]he writ of certiorari shall lie for the correction of errors committed by any inferior judicatory or any person exercising judicial powers," except in certain cases not applicable here. The majority correctly notes that this Court has held that if the hearing officer engaged in a decision-making process which required him to examine evidence and apply legal standards, then he *768 made a quasi-judicial decision. See Mack II, 227 Ga. App. at 307 (1), 489 S.E.2d 357 ; accord Laskar v. Bd. of Regents of Univ. Sys. of Ga., 320 Ga. App. 414, 416-17, 740 S.E.2d 179 (2013) (citations and punctuation omitted). However, Georgia courts have also recognized that for there to be judicial action, the "conclusion must be binding upon the parties until reversed or set aside in the manner provided by law for opening up judgments of courts." Se.Greyhound Lines v. Ga. Pub. Serv. Comm'n, 181 Ga. 75, 83, 181 S.E. 834 (1935) (citation and punctuation omitted); see also Laskar, 320 Ga. App. at 417, 740 S.E.2d 179.
In cases where this Court has previously found hearings to be quasi-judicial, the hearing officer exercised his or her own judgment under the law rather than acting under a mandate from another authority, and the decision of the hearing officer was binding on the parties without exception. See e.g. City of Cumming v. Flowers, 300 Ga. 820, 824-825 (3), 797 S.E.2d 846 (2017) (hearing was quasi-judicial where the zoning board exercised its own authority under zoning ordinance and its decision was binding and "akin to a judicial act"); Rozier v. Mayor, 310 Ga. App. 178, 180-81, 712 S.E.2d 596 (2011) (quasi-judicial where city council exercised its revocation authority under the alcohol beverage ordinance and issued a final decision that was binding on the parties); Crumpler v. Henry Cty., 257 Ga. App. 615, 617-618, 571 S.E.2d 822 (2002) (county manager exercised authority to affirm police officer's demotion under county ordinance and performed the function of a civil service board whose rulings are traditionally quasi-judicial in nature); Mack II, 227 Ga. App. at 307-08 (1), 489 S.E.2d 357 (action was quasi-judicial where hearing officer applied legal standards of res judicata and collateral estoppel).
While the majority scoffs at the housing authority's ability under "certain circumstances" to determine that it is not bound by *115 a hearing officer's decision as irrelevant,[3] the majority does not address the judiciary's authority to review such matters when the authority does reverse the decision of the hearing officer. For instance, AHA would not be bound where the decision of the hearing officer is "[c]ontrary to HUD regulations or requirements, or otherwise contrary to federal, state, or local law[,]" or where the hearing officer otherwise exceeds *769 his authority under the hearing procedures.[4] 24 CFR § 982.555 (f) (1) & (2). The regulations do not define what constitutes a hearing officer "exceeding his authority" or what, if any, recourse a recipient has to contest such a finding. Notably missing from the majority's analysis is an assessment of whether a writ of certiorari would lie in the aftermath of the authority exercising its right of review and reversal. Under the majority's approach, the Superior Court apparently would be authorized to review the housing authority's determination that it not be bound-even though such a decision is clearly a function of its administrative power. Simply because such a determination was not made in this case does not make this scenario any less worthy of the majority's consideration.
Moreover, this case is distinguishable from Flowers, Rozier, Crumpler, and Mack II because in each of those cases, the decision of the hearing officer was final and binding on the parties. Because the administrative plan at issue in this case allows for AHA to determine whether it will be bound by the hearing officer's decision, the hearing officer's decision cannot be considered a final judgment.
Thus, the function of the hearing officer in this case more closely resembles the faculty hearing committee in Laskar,[5] and the liquor license review board in What It Is, Inc. v. Jackson.[6] In Laskar, a university's faculty handbook authorized a faculty hearing committee to conduct a hearing and investigate charges against a professor. 320 Ga. App. at 415, 740 S.E.2d 179. After the formal hearing, the committee concluded that the charges proven against a tenured professor warranted termination of the professor's employment and submitted its findings and recommendation to the school's president. Id. at 415, 418, 740 S.E.2d 179. The final act resulting in the professor's discharge was issued by the school's president. Id. at 415, 740 S.E.2d 179. Similarly, in What It Is, Inc., a city ordinance authorized a license review board to conduct hearings, gather facts, and make recommendations to the mayor regarding the revocation or suspension of liquor licenses. 146 Ga. App. at 575-76, 246 S.E.2d 693. The mayor retained the authority to approve or disapprove the recommendation. Id. at 576, 246 S.E.2d 693.
Here, just as in Laskar and What It Is, Inc., the hearing officer was given authority to make findings of fact and issue a decision under the administrative plan. Thus, the fact that the final act in this *770 process occurs when AHA is satisfied that hearing officer's decision is binding illustrates the administrative nature of the informal hearing.[7] See 24 CFR § 982.555 (f) (1)-(3). AHA's role, like that of the university president in Laskar and the liquor license board in What It Is, Inc., is akin to a reviewing court in that it serves as the final arbiter of housing assistance terminations. In none of the cases where this Court has previously found hearings to be quasi-judicial could a party to the hearing under any circumstance later decide that the hearing officer's decision was non-binding. *116 The majority adopts the position that because the hearing officer was required to make factual determinations based on the preponderance of the evidence, the informal hearing was conducted in accordance with judicial procedure and therefore quasi-judicial. The majority ignores facts in the record that belie this conclusion.
[I]t must still be recognized that the ascertainment of facts, or the reaching of conclusions upon evidence taken in the course of a hearing of parties interested, may be entirely proper in the exercise of executive or legislative, as distinguished from judicial, powers. ... It is the nature of the final act that determines the nature of the previous inquiry. ... A body does not necessarily exercise judicial powers because it may make an investigation or use discretion in acting in a given case.
Se.Greyhound Lines, 181 Ga. at 81, 181 S.E. 834 (citation and punctuation omitted).
AHA's administrative plan outlines a way for Section 8 participants, whether represented by counsel, advisor or friend, to contest administrative decisions unencumbered by the legal technicalities of judicial procedures. Pursuant to the informal hearing procedures, which closely mirror federal regulations, neither AHA nor the participants are bound by the rules of evidence in presenting information, and the hearing officer is not required to be an officer of the court. See 24 CFR § 982.555 (e) (5). While the hearing officer is required to make findings based upon the evidence and testimony presented at the hearing, the hearing officer is not required to have knowledge of judicial procedure and concepts. The informal hearings are not transcribed or recorded, unless requested by the parties, and they are memorialized only by reference in the hearing officer's *771 written determination notice. In neither AHA's administrative plan nor HUD regulations are the parties or the hearing officer granted the authority to subpoena witnesses, swear witnesses, punish for contempt, or compel parties to attend.
As the Supreme Court of the United States articulated in Goldberg v. Kelly, "the pre-termination hearing need not take the form of a judicial or quasi-judicial trial ... [T]he statutory 'fair hearing' will provide the recipient with a full administrative review ... [T]he pre-termination hearing has one function only: to produce an initial determination of the validity of the welfare department's grounds for discontinuance of payments in order to protect a recipient against an erroneous termination of his benefits." 397 U.S. 254, 266-67 (II), 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). The majority's allowance of judicial review of these hearings will serve to require more formality in the process, increase the administrative cost of the program, unnecessarily consume judicial resources, and expand the time required to resolve disputes. In doing so, the majority ventures beyond the requirements articulated in Goldberg. This is a mistake. I would therefore affirm the decision of the superior court dismissing this case for lack of jurisdiction.
I am authorized to state that Judge Branch, Judge McMillian, and Judge Mercier join in this dissent.

The majority claims to be answering only a "narrow" question related to this case. Yet, nothing so limits its holding in this case. Rather, as in all such cases, it is the process and procedures that are judged to be either administrative or quasi-judicial. Thus, every case using the procedure used in this case will now be deemed quasi-judicial and subject to certiorari review in our superior courts.

See Mack II, 227 Ga. App. at 308 (1), 489 S.E.2d 357 (quoting Se. Greyhound Lines, 181 Ga. at 78-79, 181 S.E. 834 ) (describing judicial action as "an adjudication upon the rights of parties who in general appear or are brought before the tribunal by notice or process, and upon whose claims some decision or judgment is rendered. ... [T]he tribunal must exercise its own judgment under the law, and not act under a mandate from another power.").

In fact, as the majority itself has summarized, the authority may reject the determination when "federal law does not require a hearing in the first place (so the resulting decision is superfluous) or when the hearing officer does not have the authority to act or when the hearing officer's decision violates federal, state, or local law." Far from obscure, this list covers the vast majority of possible defects in such a determination.

Though not applicable to the case before us, AHA also would not be bound by a hearing decision "[c]oncerning a matter for which [it] is not required to provide an opportunity for an informal hearing[.]" See 24 CFR § 982.555 (f) (3).

320 Ga. App. at 418-19, 740 S.E.2d 179.

146 Ga. App. 574, 574-575, 246 S.E.2d 693 (1978) receded from on other grounds by, Mack II, 227 Ga. App. at 309 (1), 489 S.E.2d 357.

AHA's administrative plan does not address the procedure to be followed when AHA finds the hearing officer's decision runs afoul of 24 CFR § 982.555 (f).