**WHOLE COURT**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**November 3, 2017**

# In the Court of Appeals of Georgia

A17A0902. GOULD v. HOUSING AUTHORITY OF THE CITY
   OF AUGUSTA.

McFADDEN, Presiding Judge.

Carrie Gould appeals the superior court's dismissal of her petition for certiorari
in which she sought review of a hearing officer's decision upholding the decision of
the Housing Authority of the City of Augusta to terminate her Section 8 voucher
benefits. We agree with Gould that the hearing officer's decision is subject to review
on certiorari because the hearing was quasi-judicial in nature and the hearing officer
exercised judicial powers. Thus, we reverse the superior court's dismissal of the
petition.

The question of whether the superior court lacked jurisdiction is an issue of law
that this court reviews de novo. See *Goddard v. City of Albany*, 285 Ga. 882, 883 (1)

(684 SE2d 635) (2009). So viewed, the record reflects that the Housing Authority of the City of Augusta is the public housing authority that administers the federal government's Section 8 housing vouchers program for the city of Augusta and is governed by federal regulations codified in 24 CFR § 982, et seq. The United States Department of Housing and Urban Development ("HUD") is the regulatory agency that oversees the voucher program. 24 CFR § 982.1. Under the voucher program, the housing authority issues vouchers to qualified families, those families submit the vouchers to participating landlords, and the landlords, in turn, redeem the vouchers with the housing authority for payment. The housing authority funds its regular voucher payments with annual contributions from HUD, and those contributions are only permitted to be used for regular voucher payments. See *Jones v. Housing Auth. of Fulton County*, 315 Ga. App. 15, 17 n. 2 (726 SE2d 484) (2012). In accordance with HUD requirements, the housing authority adopted a written administrative plan that established policies for administration of the program. See 24 CFR § 982.54 (a).

Gould was issued a voucher under federal Section 8 Housing Assistance Payments Program for Existing Housing (Section 8) by the housing authority, which she used to rent a home from her landlord. After an annual inspection, the housing authority determined that Gould's residence did not meet the housing quality

2

standards required under federal regulations, and it gave notice to Gould that the vouchers to her landlord would be terminated. Gould then sought approval from the housing authority to move to a new residence. Pursuant to the housing authority's administrative plan, before Gould could be issued new vouchers for a new residence, the housing authority required the submission of a "zero balance letter" from Gould's current landlord stating that Gould did not owe the landlord any money for rent or damages. The landlord refused to issue the letter.

The housing authority then terminated Gould's participation in the Section 8 program for her failure to comply with the housing authority family obligations and submit the required documents. The housing authority informed Gould of her right to contest the decision under the housing authority's administrative plan. See 24 CFR § 982.555. Gould requested an informal hearing and was represented by counsel who recorded the hearing, although neither a copy of the recording nor a transcript of the informal hearing was included in the record on appeal. (The housing authority's counsel of record on appeal was the hearing officer.) The hearing officer upheld the housing authority's decision to terminate Gould's participation in the Section 8 program.

Gould filed a petition for a writ of certiorari in superior court pursuant to OCGA § 5-4-1 (a) seeking review of the decision to terminate her rental assistance. After the superior court initially issued the writ of certiorari, the housing authority moved to dismiss the petition for lack of jurisdiction, arguing that the decision was administrative and not subject to review. Following a hearing, the superior court granted the housing authority's motion to dismiss and vacated the writ of certiorari, finding that it lacked jurisdiction to review the decision. We granted Gould's application for discretionary appeal to consider whether the superior court erred in dismissing her petition for writ of certiorari for lack of jurisdiction.

Under OCGA § 5-4-1 (a), "[t]he writ of certiorari shall lie for the correction of errors committed by any inferior judicatory or any person exercising judicial powers," except in certain cases not applicable here. To determine whether a writ of certiorari is the appropriate method of review,

> we must decide whether the hearing officer whose order is being reviewed exercised judicial or quasi-judicial powers, or whether the officer merely exercised administrative or legislative functions. If the officer exercised judicial powers, his or her actions are subject to review on certiorari; if, however, the officer exercised legislative, executive, or ministerial powers, any error cannot be corrected by certiorari. . . . The basic distinction between an administrative and a judicial act by officers

4

other than judges is that a quasi-judicial action, contrary to an administrative function, is one in which all parties are as a matter of right entitled to notice and to a hearing, with the opportunity afforded to present evidence under judicial forms of procedure; and that no one deprived of such rights is bound by the action taken. The test is whether the parties at interest had a right under the law to demand a trial in accordance with judicial procedure.

*Mack II v. City of Atlanta*, 227 Ga. App. 305, 307 (1) (489 SE2d 357) (1997) (citations, punctuation, and emphasis omitted). In deciding whether the hearing officer exercised judicial or quasi-judicial powers, "the particular function performed at the hearing must be evaluated." *Bd. of Commrs. of Effingham County v. Farmer*, 228 Ga. App. 819, 822 (1) (493 SE2d 21) (1997) (holding that a hearing authority exercised quasi-judicial power because it functioned as a civil service board, and that the rulings of such tribunals are quasi-judicial in nature).

The record reflects that the housing authority notified Gould of her right to request an "informal hearing" in accordance with federal regulations mandating such notice and hearing.[1] 24 CFR § 982.555 (a) (2), (c) (2). Gould submitted such a

---

[1] We note that the use of the term "informal hearing" is not dispositive in determining whether a hearing is administrative or quasi-judicial. See *Mack II*, 227 Ga. App. at 309 (1) ("Descriptive uses of this word are not controlling. It is not the description of the office, body, or board performing the action that is scrutinized; the character and nature of the

request. Gould was represented by counsel at the hearing. See 24 CFR § 982.555 (c) (3). She was permitted to voice her disagreement with the housing authority's determination, id. at (c) (2) (ii), to conduct discovery, id. at (e) (2) (i), to present evidence and cross-examine witnesses at the hearing, id. at (e) (5), and, in accordance with the housing authority's administrative plan, to request that the housing authority staff be present at the hearing to answer questions. The hearing officer conducted the hearing in accordance with the procedures established in the housing authority's administrative plan. 24 CFR § 982.55 (4) (ii). Under the federal regulations and the housing authority's administrative plan, the hearing was not subject to the strict rules of evidence but the hearing officer was required to, and did, make findings based upon the preponderance of the evidence and testimony presented at the hearing.[2] 24 CFR § 982.555 (e) (5), (6).

The record demonstrates that Gould had the right to proper notice and a fair hearing, that she was afforded the opportunity to present evidence under judicial

authorized function controls the issue of whether the function is judicial or quasi-judicial.") (citations and punctuation omitted).

[2]Like the label "informal," the lack of adherence to the strict rules of evidence is not dispositive in determining whether a hearing is administrative or quasi-judicial. See *Chamblee Visuals, LLC v. City of Chamblee*, 270 Ga. 33, 35 (4) (506 SE2d 113) (1998).

forms of procedure, and that the hearing officer made his decision after determining the facts under a preponderance of the evidence standard and applying the appropriate law. Thus the hearing officer's decision was the result of quasi-judicial action. See *City of Cumming v. Flowers*, 300 Ga. 820, 823-824 (3) (797 SE2d 846) (2017); *South View Cemetery Assn. v. Hailey*, 199 Ga. 478, 481 (4) (34 SE2d 863) (1945).

The dissent characterizes our opinion as improperly expanding the role of the judiciary. That is a mischaracterization. The issue before us is narrow: whether Georgia law provides certiorari review in cases like this one.

The dissent finds that the hearing was administrative instead of quasi-judicial primarily for two reasons: because the hearing officer's actions are subject to the authority granted to him by the housing authority and because under certain circumstances the hearing officer's decision is not binding on the parties. Neither reason supports the determination that the proceeding was administrative instead of quasi-judicial.

The authority and responsibility vested in the hearing officer under the housing authority's administrative plan required him to determine "whether the action, inaction or decision of the Augusta Housing Authority [was] legal in accordance with HUD regulations and [the] [a]dministrative [p]lan based upon the evidence and

7

testimony provided at the hearing." See 24 CFR §§ 982.54, 982.555 (a). Contrary to the dissent's position, the hearing officer was charged with exercising his own judgment under the federal law applicable to the housing authority's decision. He was required to "determine the facts and apply the [appropriate] legal standards to them, which is a decision-making process akin to a judicial act." *City of Cumming*, 300 Ga. at 824 (3). Because he was "called upon to make factual determinations and thus adjudicate, [he was] acting in a quasi-judicial capacity." Id. (citation and punctuation omitted).

And it is irrelevant that in certain limited circumstances a housing authority can make a "determin[ation] that it is not bound by a hearing decision . . . ." 24 CFR § 982.555 (f) (3). In order to effectuate such a determination, the authority "must promptly notify the family of the determination, and of the reasons for the determination." Id. Here there has been no such notice and no such determination. The administrative decision before us was "the operative decision of the agency on the matter." See *Wolfe v. Bd. of Regents of the Univ. System of Ga.*, 300 Ga. 223, 229 (2) (c) (794 SE2d 85) (2016).

Under the administrative plan, the authority may make such a determination of non-bindingness only about hearing decisions that: "concern matters in which the

8

Augusta Housing Authority is not required to provide an opportunity for a hearing; . . . conflict with or contradict HUD regulations or requirements; . . . conflict with or contradict federal, state, or local laws; or . . . exceed the authority of the person conducting the hearing." See also 24 CFR § 982.555 (f) (1) (a public housing authority is not bound by a hearing decision that concerns "a matter for which the [housing authority] is not required to provide an opportunity for an informal hearing under this section, or that otherwise exceeds the authority of the person conducting the hearing under the [housing authority] hearing procedures."). In other words, the housing authority is bound unless federal law does not require a hearing in the first place (so the resulting decision is superfluous) or when the hearing officer does not have the authority to act or when the hearing officer's decision violates federal, state, or local law. Otherwise the housing authority is bound by a hearing officer's decisions.

The dissent questions our failure to address the propriety of certiorari review in situations where the housing authority determines that it is not bound by the hearing officer's decision so that the hearing officer's decision is not final. But "[t]he hypothetical difficulty raised by [the dissent] is not before us, and we may not issue a hypothetical or advisory opinion." *Mack v. Ga. Auto Pawn*, 262 Ga. App. 277, 289

9

(2) (585 SE2d 661) (2003). It is not disputed that the hearing officer's decision in this case was final.

The dissent relies on cases in which the decision at issue was only advisory, leaving the ultimate decision to the discretion of a final decision maker. Such is not the case here. In *Laskar v. Bd. of Regents of the Univ. System of Ga.*, 320 Ga. App. 414 (740 SE2d 179) (2013), we addressed whether a terminated Georgia Tech professor could seek review of his termination using a writ of certiorari under OCGA § 5-4-1. We determined that the review of his discharge by a faculty hearing committee was not quasi-judicial but administrative because the committee only submitted a "recommendation" to the university president, who was free to accept or reject the recommendation. Id. at 418. (Our Supreme Court has cast some doubt on this holding in *Laskar*, pointedly "express[ing] no opinion" on it. *Wolfe*, 300 Ga. at 229 (2) (c)). Here, on the other hand, the authority was not free to accept or reject the hearing officer's decision; it could reject the decision only under the limited circumstances described above. And it did not do so. Unlike the committee's decision in *Laskar*, the hearing officer's decision here was final.

Similarly, in *What It Is, Inc. v. Jackson*, 146 Ga. App. 574 (246 SE2d 693) (1978), we held that a decision by a license review board to revoke a liquor license

was not a judicial proceeding because "the board was not authorized to enter any judgment but only was permitted to make a recommendation to the mayor which was not binding on him." Id. at 576. Again the hearing officer's decision here was not a mere recommendation that automatically required acceptance or rejection by the housing authority. It was a final decision that bound the housing authority and Gould.

"Because of the substantial differences between the function of the hearing officer[] here and the function of the hearing officers in the cases cited by [the dissent] (i.e., *Laskar* and *Jackson*, []), those cases are inapposite." *Scott v. Atlanta Independent School System*, 2014 WL 12621230, at *12 (N.D. Ga. 2014) (ruling that plaintiffs' 42 USC § 1983 claims should be dismissed because the plaintiffs had an adequate remedy at law — the writ of certiorari; hearing officer's actions were quasi-judicial even though hearing officer's decision was subject to limited appeal procedures).

In this case, the hearing officer exercised authority under federal law, conducted a hearing in accordance with judicial procedure, and his decision was binding. The hearing officer's decision was thus quasi-judicial. The superior court erred in dismissing the petition for writ of certiorari.

11

*Judgment reversed. Barnes, P. J., Miller, P. J., Doyle, and Reese, JJ., concur.*

*Branch, McMillian, Mercier, and Bethel, JJ., dissents.*

12

A17A0902. GOULD v. HOUSING AUTHORITY OF THE CITY
OF AUGUSTA.

Bᴇᴛʜᴇʟ, Judge, dissenting.

The majority's opinion in this case improperly expands the role of the

judiciary.[1] The regulations governing the housing authority with respect to the

---

[1] The majority claims to be answering only a "narrow" question related to this case. Yet, nothing so limits its holding in this case. Rather, as in all such cases, it is the process and procedures that are judged to be either administrative or quasi-judicial. Thus, every case using the procedure used in this case will now be deemed quasi-judicial and subject to certiorari review in our superior courts.

termination of benefits provide expedient and decisive action while at the same time ensuring welfare recipients receive the minimum procedural safeguards afforded by the Due Process Clause of the Fourteenth Amendment. In this case, the hearing officer's actions are subject to the authority granted to it by AHA as opposed to an exercise of its own judgment under the law.[2] Moreover, under all circumstances where the authority determines that the hearing officer committed an error, the hearing officer's decisions are not binding on the parties. Consequently, the trial court did not err in finding that the informal hearing was administrative in nature and it therefore lacked jurisdiction to review it. Accordingly, I respectfully dissent.

Under OCGA § 5-4-1(a), "[t]he writ of certiorari shall lie for the correction of errors committed by any inferior judicatory or any person exercising judicial powers," except in certain cases not applicable here. The majority correctly notes that this Court has held that if the hearing officer engaged in a decision-making process which required him to examine evidence and apply legal standards, then he made a quasi-judicial decision. *See Mack II*, 227 Ga. App. at 307 (1); *accord Laskar v. Bd.*

---

[2] *See Mack II*, 227 Ga. App. at 308 (1) (quoting *Se. Greyhound Lines*, 181 Ga. at 78-79 (describing judicial action as "an adjudication upon the rights of parties who in general appear or are brought before the tribunal by notice or process, and upon whose claims some decision or judgment is rendered. . . . [T]he tribunal must exercise its own judgment under the law, and not act under a mandate from another power.").

2

*of Regents of Univ. Sys. of Ga.*, 320 Ga. App. 414, 416-17 (740 SE2d 179) (2013) (citations and punctuation omitted). However, Georgia courts have also recognized that for there to be judicial action, the "conclusion must be binding upon the parties until reversed or set aside in the manner provided by law for opening up judgments of courts." *Se. Greyhound Lines v. Ga. Pub. Serv. Comm'n*, 181 Ga. 75, 83 (181 SE 834) (1935) (citation and punctuation omitted); *see also Laskar*, 320 Ga. App. at 417.

In cases where this Court has previously found hearings to be quasi-judicial, the hearing officer exercised his or her own judgment under the law rather than acting under a mandate from another authority, and the decision of the hearing officer was binding on the parties without exception. *See e.g. City of Cumming v. Flowers*, 300 Ga. 820, 824-825 (3) (797 SE2d 846) (2017) (hearing was quasi-judicial where the zoning board exercised its own authority under zoning ordinance and its decision was binding and "akin to a judicial act"); *Rozer v. Mayor*, 310 Ga. App. 178, 180-81 (712 SE2d 596) (2011) (quasi-judicial where city council exercised its revocation authority under the alcohol beverage ordinance and issued a final decision that was binding on the parties); *Crumpler v. Henry Cty*, 257 Ga. App. 615, 617-618 (571 SE2d 822) (2002) (county manager exercised authority to affirm police officer's demotion under county ordinance and performed the function of a civil service board whose rulings

3

are traditionally quasi-judicial in nature); *Mack II*, 227 Ga. App. at 307-08 (1) (action was quasi-judicial where hearing officer applied legal standards of res judicata and collateral estoppel).

While the majority scoffs at the housing authority's ability under "certain circumstances" to determine that it is not bound by a hearing officer's decision as irrelevant,[3] the majority does not address the judiciary's authority to review such matters when the authority does reverse the decision of the hearing officer. For instance, AHA would not be bound where the decision of the hearing officer is "[c]ontrary to HUD regulations or requirements, or otherwise contrary to federal, state, or local law[,]" or where the hearing officer otherwise exceeds his authority under the hearing procedures.[4] 24 CFR § 982.555 (f) (1) & (2). The regulations do not define what constitutes a hearing officer "exceeding his authority" or what, if any, recourse a recipient has to contest such a finding. Notably missing from the majority's

---

[3] In fact, as the majority itself has summarized, the authority may reject the determination when "federal law does not require a hearing in the first place (so the resulting decision is superfluous) or when the hearing officer does not have the authority to act or when the hearing officer's decision violates federal, state, or local law." Far from obscure, this list covers the vast majority of possible defects in such a determination.

[4] Though not applicable to the case before us, AHA also would not be bound by a hearing decision "[c]oncerning a matter for which [it] is not required to provide an opportunity for an informal hearing[.]" *See* 24 CFR § 982.555 (f) (3).

4

analysis is an assessment of whether a writ of certiorari would lie in the aftermath of the authority exercising its right of review and reversal. Under the majority's approach, the Superior Court apparently would be authorized to review the housing authority's determination that it not be bound—even though such a decision is clearly a function of its administrative power. Simply because such a determination was not made in this case does not make this scenario any less worthy of the majority's consideration.

Moreover, this case is distinguishable from *Flowers*, *Rozer*, *Crumpler*, and *Mack II* because in each of those cases, the decision of the hearing officer was final and binding on the parties. Because the administrative plan at issue in this case allows for AHA to determine whether it will be bound by the hearing officer's decision, the hearing officer's decision cannot be considered a final judgment.

Thus, the function of the hearing officer in this case more closely resembles the faculty hearing committee in *Laskar*,[5] and the liquor license review board in *What It Is, Inc. v. Jackson*.[6] In *Laskar*, a university's faculty handbook authorized a faculty

---

[5] 320 Ga. App. at 418-19.

[6] 146 Ga. App. 574, 574-575 (246 SE2d 693) (1978) receded from on other grounds by, *Mack II*, 227 Ga. App. at 309 (1).

hearing committee to conduct a hearing and investigate charges against a professor. 320 Ga. App. at 415. After the formal hearing, the committee concluded that the charges proven against a tenured professor warranted termination of the professor's employment and submitted its findings and recommendation to the school's president. *Id.* at 415, 418. The final act resulting in the professor's discharge was issued by the school's president. *Id*. at 415. Similarly, in *What It Is, Inc.*, a city ordinance authorized a license review board to conduct hearings, gather facts, and make recommendations to the mayor regarding the revocation or suspension of liquor licenses. 146 Ga. App. at 575-76. The mayor retained the authority to approve or disapprove the recommendation. *Id*. at 576.

Here, just as in *Laskar* and *What It Is, Inc.*, the hearing officer was given authority to make findings of fact and issue a decision under the administrative plan. Thus, the fact that the final act in this process occurs when AHA is satisfied that hearing officer's decision is binding illustrates the administrative nature of the informal hearing.[7] *See* 24 CFR § 982.555 (f) (1)-(3). AHA's role, like that of the university president in *Laskar* and the liquor license board in *What It Is, Inc.*, is akin

---

[7] AHA's administrative plan does not address the procedure to be followed when AHA finds the hearing officer's decision runs afoul of 24 CFR § 982.555 (f).

6

to a reviewing court in that it serves as the final arbiter of housing assistance terminations. In none of the cases where this Court has previously found hearings to be quasi-judicial could a party to the hearing under any circumstance later decide that the hearing officer's decision was non-binding.

The majority adopts the position that because the hearing officer was required to make factual determinations based on the preponderance of the evidence, the informal hearing was conducted in accordance with judicial procedure and therefore quasi-judicial. The majority ignores facts in the record that belie this conclusion.

[I]t must still be recognized that the ascertainment of facts, or the reaching of conclusions upon evidence taken in the course of a hearing of parties interested, may be entirely proper in the exercise of executive or legislative, as distinguished from judicial, powers. . . . It is the nature of the final act that determines the nature of the previous inquiry. . . . A body does not necessarily exercise judicial powers because it may make an investigation or use discretion in acting in a given case.

*Se. Greyhound Lines*, 181 Ga. at 81 (citation and punctuation omitted).

AHA's administrative plan outlines a way for Section 8 participants, whether represented by counsel, advisor or friend, to contest administrative decisions unencumbered by the legal technicalities of judicial procedures. Pursuant to the informal hearing procedures, which closely mirror federal regulations, neither AHA nor the participants are bound by the rules of evidence in presenting information, and the hearing officer is not required to be an officer of the court. *See* 24 CFR § 982.555 (e) (5). While the hearing officer is required to make findings based upon the evidence and testimony presented at the hearing, the hearing officer is not required to have knowledge of judicial procedure and concepts. The informal hearings are not transcribed or recorded, unless requested by the parties, and they are memorialized only by reference in the hearing officer's written determination notice. In neither AHA's administrative plan nor HUD regulations are the parties or the hearing officer granted the authority to subpoena witnesses, swear witnesses, punish for contempt, or compel parties to attend.

As the Supreme Court of the United States articulated in *Goldberg v. Kelly*, "the pre-termination hearing need not take the form of a judicial or quasi-judicial trial . . . [T]he statutory 'fair hearing' will provide the recipient with a full administrative review . . . [T]he pre-termination hearing has one function only: to produce an initial

8

determination of the validity of the welfare department's grounds for discontinuance of payments in order to protect a recipient against an erroneous termination of his benefits." 397 U.S. 254, 266-67 (II) (90 SCt 1011, 25 LEd2d 287) (1970). The majority's allowance of judicial review of these hearings will serve to require more formality in the process, increase the administrative cost of the program, unnecessarily consume judicial resources, and expand the time required to resolve disputes. In doing so, the majority ventures beyond the requirements articulated in *Goldberg*. This is a mistake. I would therefore affirm the decision of the superior court dismissing this case for lack of jurisdiction.